Jusab L. MANJI, Rubab Kahanu J. Manji, Zulfikarali Y. Manji, Shiraz Y. Manji, Rozina Y. Manji, Karim Y. Manji, and Kamaluddin N. Kassan, Plaintiffs,

v.

NEW YORK LIFE INSURANCE COMPANY, and Nazmuddin Patni, Defendants.

Civil Action No. 6:95–3190–20.

United States District Court, D. South Carolina, Greenville Division.

Nov. 25, 1996.

H.W. Pat Paschal, Jr., Greenville, SC, for plaintiffs.

H. Sam Mabry, III and J.D. Quattlebaum, Greenville, SC, and Allan Levin, Columbia, SC, for defendants.

## ORDER

HERLONG, District Judge.

This matter is before the court on the motion of the defendants, New York Life Insurance Company ("New York Life") and Nazmuddin Patni, for summary judgment. After granting the plaintiffs an extension of time, the response to the motion for summary judgment was due on November 15, 1996. The plaintiffs did not file a response until November 20, 1996.

The defendants claim that the plaintiffs are precluded from pursuing this action because of the final order entered by the Supreme Court of New York in the class action titled *Willson v. New York Life Ins. Co.*, Index No. 94/127804 (Sup.Ct.N.Y. Feb. 1, 1996). *Willson* was a nationwide class action, maintained on behalf of approximately three million current and former New York Life policy owners. The defendants allege that the plaintiffs were given several opportunities to opt-out of the class action, but that they failed to do so.

The plaintiffs received all required notices of the class action pending in New York prior to August 30, 1995. (Defs.Mot.Summ.J. Ex. 14, 15.) These notices fully described how the plaintiffs could opt-out of the class action and the consequences of failing to do so by October 31, 1995. Recognizing the seriousness of these notices, the plaintiffs forwarded them to their attorney. As a result, their attorney wrote a letter on August 30, 1995, to

New York Life at the *Willson* Class Action Administrative Center. The letter stated in pertinent part:

> Please be advised that a separate action was filed in South Carolina Federal Court prior to receiving notice of the class action, and I have enclosed a copy of these documents. I would appreciate your noting in your record this other action.
>
> We are serving this Complaint upon you to serve in the form of objection if the relief prayed for in this Complaint cannot be granted under the class action.

(Defs.Mot.Summ.J. Ex. 8.) On September 15, 1995, New York Life's in-house counsel responded. The response stated:

> Your August 30, 1995 letter to New York Life's Class Action Administration Center has been referred to me for reply.
>
> Please advise me as to whether your letter constitutes your clients' decision to opt-out of the **Willson** class action settlement.

(Defs.Mot.Summ.J. Ex. 9.) Plaintiffs' counsel sent another letter to New York Life on October 11, 1995. New York Life did not receive the letter until October 17, 1995. The letter stated:

> I received your letter dated September 15, 1995 requesting notification if our client decided to opt out of the Wilson Class Action Settlement. His decision is dependent on which relief will be granted in that settlement. We would appreciate being advised in that regard so that we can make that decision.

(Defs.Mot.Summ.J. Ex. 10.) In response to this letter, the in-house counsel for New York Life sent out another letter. Because of the approaching deadline for opting-out, this letter was sent via Airborne Express on October 24, 1995. (*See* Defs.Mot.Summ.J. Ex. 12.) It stated:

> I have received your October 11, 1995 letter on October 17, 1995. Please be advised that I can offer no advices [sic] with respect to the relief that would be afforded to your clients in the class action settlement.

(Defs.Mot.Summ.J. Ex. 11.) Neither the plaintiffs nor their attorney contacted New York Life regarding opting-out after this last letter.

■ Plaintiffs contend that they effectively opted out of the *Willson* class action, or that, in the alternative, a jury issue is presented as to the interpretation of the correspondence. In its final judgment, the Supreme Court of New York made specific findings as to the class members who were excluded from the class. The plaintiffs in this action were not excluded. The plaintiffs' only remedy was to take a direct appeal at that time. They do not now have the option of collaterally attacking the *Willson* class determination. *See Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 32 (1st Cir.1991); *see generally, Swanson v. Faulkner*, 55 F.3d 956, 966 (4th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 417, 133 L.Ed.2d 335 (1995) (finding that a federal court is bound to recognize state court's prior resolution of preclusion issues).

■ Even if the plaintiffs can collaterally attack their opt-out status, after reviewing the record, the court is compelled to conclude that the plaintiffs did not effectively opt-out of the *Willson* class action. According to the *Willson* class notice, the plaintiffs had three choices: (1) "remain in the Class and participate in the benefits of the proposed settlement"; (2) "remain in the Class ... [and] file with the Court a written objection to any aspect of the proposed settlement"; or (3) "exclude yourself from the Class by sending a formal written request for exclusion." (Defs.Mot.Summ.J. Ex. 5 at 4.) The plaintiffs' attempt to determine what the settlement would entail prior to making their decision cannot exclude them from the *Willson* class, nor does it appear that this was the plaintiffs' intention. The correspondence leaves little doubt that neither party considered the plaintiffs excluded from the *Willson* class.

Plaintiffs' own attorney stated in his October 11, 1995 letter that: "[The plaintiffs'] decision is dependent on which relief will be granted in that settlement. We would appreciate being advised in that regard so that we can make that decision." Obviously, plaintiffs' attorney was still trying to decide

whether the plaintiffs should opt-out. Absent some ambiguity, the court finds that there is no jury issue presented as to the interpretation of the correspondence and the plaintiffs' alleged attempt to opt-out. *See generally Consolidated Gas Supply Corp. v. F.E.R.C.*, 745 F.2d 281 (4th Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985) ("It is a reasonable interpretation device to conclude that what someone has not said, someone has not meant.").

■ Furthermore, the fact that this action was pending prior to the *Willson* class action "does not excuse a class member from filing a valid request for exclusion." *In re Prudential Securities Inc.*, 164 F.R.D. 362, 370 (S.D.N.Y.1996). Therefore, unless some reason exists to deny full faith and credit to the final judgment rendered in the *Willson* class action, the plaintiffs in this case are precluded from pursuing this suit and summary judgment must be granted. (Defs.Mot.Summ.J. Ex. 2 at 73.) (enjoining class members from filing, commencing, or prosecuting any related lawsuit).

■ Under the Full Faith and Credit Act, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986); *see also Sea Cabin v. City of North Myrtle Beach*, 828 F.Supp. 1241, 1248 (D.S.C.1993). "[A] judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the [Full Faith and Credit] Act." *Matsushita Elec. Indus. Co. v. Epstein*, —— U.S. ——, ——, 116 S.Ct. 873, 878, 134 L.Ed.2d 6 (1996).

■ In a class action settlement, the issue is whether the state court considered issues of subject matter jurisdiction over the case and the claims pending before it in the state lawsuit. *Id.* at ——, 116 S.Ct. at 884. As long as the court fully and fairly considered and decided issues of subject matter jurisdiction, full faith and credit must be extended to the settlement agreement. *Underwriters Nat'l Assurance Co. v. North Carolina Life*

*& Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 707, 102 S.Ct. 1357, 1367, 71 L.Ed.2d 558 (1982); *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963). If it did fully and fairly consider and decide issues of subject matter jurisdiction, the *Willson* court's determination that it had jurisdiction over the class members may not be challenged collaterally in this forum. *Underwriters Nat'l Assurance Co.*, 455 U.S. at 714, 102 S.Ct. at 1370. After reviewing the record, the court finds that the *Willson* court fully and fairly considered and decided that it had jurisdiction over all class members. (*See* Defs.Mot.Summ.J. Ex. 2 at 31, 32a.) Having found that the *Willson* court fully and fairly decided issues of subject matter jurisdiction, it follows that this court must extend full faith and credit to the *Willson* final judgment. The only question left for the court to address is whether res judicata bars the plaintiffs' claims in this action.

■ The res judicata effect of the *Willson* judgment is that "which the judgment would be accorded in the State which rendered it." *Durfee*, 375 U.S. at 109, 84 S.Ct. at 244; *United States v. Turner*, 933 F.2d 240, 243 n. 2 (4th Cir.1991). "Federal courts may not 'employ their own rules ... in determining the effect of state judgments,' but must 'accept the rules chosen by the State from which the judgment is taken.'" *Matsushita*, —— U.S. at ——, 116 S.Ct. at 877; *see Davenport v. North Carolina Dep't of Transp.*, 3 F.3d 89, 92–93 (4th Cir.1993).

■ Under New York law, a judgment is res judicata in a subsequent lawsuit if: (1) the parties to the subsequent suit are identical or in privity with the parties to the prior suit; (2) the prior judgment was entered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the claims in both suits arise out of the same transactions. *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 310, 386 N.E.2d 1328, 1331 (1979); *Jerome J. Steiker Co. v. Eccelston Properties Ltd.*, 156 Misc.2d 308, 593 N.Y.S.2d 394, 398, 400 (N.Y.Sup.Ct.1992).

■ First, the court finds that the plaintiffs in this case were members of the *Will-*

*son* class. There is little doubt that they fit within the definition of the class as decided by the *Willson* court. (*Compare* Defs. Mot.Summ.J. Ex. 2 at 71 (defining the class in the *Willson* final judgment) *with* Defs. Mot.Summ.J. Ex. 17 (Plaintiffs' Answers to Rule 7.04 Interrogatories).) Therefore, even though they were unnamed class members they are considered parties to the prior suit. *See Huebner v. Caldwell & Cook, Inc.,* 139 Misc.2d 288, 526 N.Y.S.2d 356, 362 (N.Y.Sup. Ct.1988).

Second, the court finds that the Supreme Court of New York was a court of competent jurisdiction. As stated above, the *Willson* court's determination that it had subject matter jurisdiction cannot be challenged in this court. *See Underwriters Nat'l Assurance Co.,* 455 U.S. at 706, 102 S.Ct. at 1366; *Durfee,* 375 U.S. at 111, 84 S.Ct. at 245. The only determination that must be made is that the *Willson* court fully considered and finally decided questions of subject matter jurisdiction. *Id.* After reviewing the record, it is clear that subject matter jurisdiction was fully considered and finally decided by the *Willson* court. (Defs.Mot.Summ.J. Ex. 2 at 32a, 31.)

Third, the court finds that the *Willson* court entered a final judgment on the merits. The final judgment entered by the *Willson* court approved the class action settlement. (*See* Defs.Mot.Summ.J. Ex. 2.) A consent judgment approving a settlement in a state court constitutes a final judgment on the merits for res judicata purposes. *See Nash County Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484, 487 (4th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981). Furthermore, as the *Willson* court ordered, the dismissal of all claims on the merits with prejudice is also considered final for res judicata purposes. *See Joem Int'l, Ltd. v. Swedwall, Inc.,* 215 A.D.2d 530, 627 N.Y.S.2d 51, 52 (N.Y.App.Div.1995); *Staten Investors Group v. Schaffer,* 147 A.D.2d 631, 537 N.Y.S.2d 990 (N.Y.1989).

Fourth and finally, the court finds that this case and the *Willson* class action arise from the same transactions. The court notes that it must also make the determination of whether this case and the *Willson* class action arise from the same transactions based on New York law. *See Jones v. Poindexter,* 903 F.2d 1006, 1010 (4th Cir.1990). Under New York law, "[i]t is well settled that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking different remedies." *Stanley v. Smith,* 183 A.D.2d 675, 584 N.Y.S.2d 60, 61 (N.Y.App.Div.1992) (citing *O'Brien v. Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158, 1159 (1981)).

The basis for the plaintiffs' various claims for relief in this action is that they entered into an insurance contract "wherein each Plaintiff agreed to make premium payment to the Defendant New York Life over a period of three years, and that Defendant agreed to provide life insurance for the Plaintiff's benefit." (Pls.' Compl. ¶ II) "That as part of this agreement, the Plaintiff would not have to pay any further premium payments and that upon the third year payment, the policy would be paid in full." *Id.*

The *Willson* plaintiffs alleged that they "and the class were fraudulently induced and deceived into the purchasing of Policies based upon uniformly false and misleading sale presentations, policy illustrations, marketing materials and other information approved, prepared and disseminated by the New York Life defendants to their nationwide sales force of over 10,000 agents throughout the United States" which "[m]isrepresented the number of 'out-of-pocket' cash premium payments a policyholder would have to pay for his or her policy and ... the cash value and/or benefits a policyholder would realize under his or her policy based on a particular number of cash premium payments." (Defs.Mot.Summ.J. Ex. 1 ¶ 11.) The *Willson* plaintiffs further alleged that one of the issues presented was

> "whether the New York Life defendants, through their nationwide sales force, breached their contracts with plaintiff and the members of the Class during the Class Period by ... charging additional premiums on Policies purchased by plaintiffs and members of the Class, despite representa-

tions that either the single prepayment of premiums made by plaintiffs and members of the Class at the time of purchase, or a fixed number of premiums paid during a fixed period of years, would be sufficient to carry the cost of the Policies for the life of the insured."

(Defs.Mot.Summ.J. Ex. 1 ¶ 12(b)(iii).)

As stated above, under New York law, the fact that the plaintiffs in this action have based their claims upon different theories or that they are seeking different remedies is of no consequence. *See Stanley*, 584 N.Y.S.2d at 61 (citing *O'Brien*, 445 N.Y.S.2d at 688, 429 N.E.2d at 1159). Therefore, after reviewing both complaints and considering New York law, the court finds that the plaintiffs' claims in this action are identical to the claims in the *Willson* class action.

Having determined that the plaintiffs did not opt-out of the class, that the final judgment in the *Willson* class action must be accorded full faith and credit, and that the final judgment is res judicata as to this action, the court is constrained to grant the defendants' motion for summary judgment.

Accordingly, it is

**ORDERED** that the defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**